UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 19-083 |
| v. | * | SECTION: "T" |
| JUAN ARMSTEAD | * | |

\* \* \*

## FACTUAL BASIS

Should this matter have proceeded to trial, the United States would have proven, through the introduction of competent testimony and admissible evidence, the following facts, beyond a reasonable doubt:

**JUAN ARMSTEAD ("ARMSTEAD")** has been identified as a member of a group of individuals who recruit homeless people and others to cash counterfeit checks at financial institutions, primarily in Jefferson Parish, LA. The account information on the checks is derived from checks stolen from United States Postal Service mail. **ARMSTEAD** occasionally goes by the nicknames "4," "4-4", or "44."

Investigators with the Jefferson Parish Sheriff's Office (JPSO) began to get numerous reports of counterfeit checks being cashed at local financial institutions beginning around the summer of 2017. The account information on the checks is derived from checks stolen from United States Postal Service mail, primarily from an area in Plaquemines Parish, LA. Investigators were able to make arrests of people who later advised they were homeless. During interviews, the subjects advised that they had been picked up in the city of New Orleans, near locations such as Rebuild (believed to be The St. Joseph Rebuild Center 1825 Tulane Ave.) and the Mission (1134

AUSA
Defendant
Defense Counsel

Baronne St.), among other locations.

On or about August 3, 2018, JPSO arrested a cooperating source (CS-1) for attempting to cash a counterfeit check in the amount of $1,792.13 at Regions Bank located at 805 Ave. D in Marrero, Louisiana. The bank employee immediately identified the check as counterfeit and contacted the account holder who advised he would come to the location. While the bank was stalling, CS-1 took a deposit slip and wrote a note stating, "I am in danger and being forced to do this." The bank then contacted JPSO and CS-1 was arrested and transported to the Jefferson Parish Investigations Bureau where he was advised of his rights per Miranda, and gave a voluntary statement.

CS-1 admitted that he had never worked for the business depicted on the check and admitted that he had never done any work that day to get paid. He stated he was instructed to cash the check at a bank, and if he was successful, he was to light a cigarette to signal that he had been successful. This was done to confirm to the recruiters that law enforcement had not been notified. CS-1 stated he was recruited in the city of New Orleans near the Rebuild Center on Tulane Ave. by two black males who offered him work. The suspects then drove him to the West Bank area where they told him they would have to pay him in the form of a check. They asked for his identification so they could get all of his information for proper payment. CS-1 was unable to make a positive ID from a photo lineup but stated the suspect who recruited him had a tattoo on his jaw line.

On or about August 16, 2018, a JPSO detective obtained a recent photograph from social media showing **ARMSTEAD** with a tattoo on his jaw-line, as described by CS-1. Review of the Automated License Plate Recognition Cameras (ALPR) established that a black Jeep Cherokee SUV (GA plate PNA7908) seen in **ARMSTEAD**'s driveway was in the vicinity of CS-1 at the

2

AUSA
Defendant
Defense Counsel

time CS-1 was recruited on August 3, 2018. The black Jeep Cherokee SUV was also observed on the ALPR cameras to be in the vicinity of Regions Bank around the time when CS-1 attempted to cash the counterfeit check. Using the data provided by T-Mobile, a United States Secret Service Special Agent mapped out **ARMSTEAD** 's location based on the tower information on the phone, revealing that **ARMSTEAD's** cell phone was near Regions Bank located at 850 Ave. D in Marrero on August 3, 2018 where CS-1 was arrested.

On or about October 23, 2018, another confidential source (CS-2) attempted to cash a counterfeit check in the amount of $1,980.94 at Hancock Whitney Bank located at 4454 Transcontinental Drive in Metairie, LA. The check was purportedly from Claymar Construction. The bank employee recalled a notice that required all bank employees to contact Claymar Construction prior to cashing any checks against their account. This was due to several counterfeit checks being cashed on the business's account. The bank employee informed the subject that it would take a few minutes for them to cash the check because of the verification process. The subject then walked out of the bank, leaving the check, as well as his Louisiana Driver's License. Claymar Construction later verified that the company did not issue the check presented by CS-2.

On or about December 11, 2018, CS-2 was arrested. From a six-person photograph lineup, CS-2 identified **ARMSTEAD** as one of the individuals involved in the check cashing scheme. CS-2 said that on or around the early morning hours of October 22, 2018, he was approached by three black males who asked him if he was interested in making some extra money. They explained that they would give him a payroll check, and they would then drive him to a bank to cash the check. CS-2 observed the three males leave the location in a black Jeep Cherokee. Two of the three suspects met CS-2 early the next morning in the same black Jeep Cherokee. They began driving and met with an unknown person at an unknown store where they picked up the checks. They left

the location and went to approximately four different banks where all of the attempts were unsuccessful. The next morning the same two subjects picked up CS-2, again driving the black Jeep Cherokee. This time, they went to four different banks. At the first bank, they were unsuccessful, but they were able to cash checks at the second and third locations. At the fourth location, CS-2's driver license and the check were held by the bank.

On or about November 27, 2018, another confidential source (CS-3) walked into Hancock Whitney Bank, located at 4301 Lapalco Blvd., Marrero, LA 70072 and attempted to cash a counterfeit check in the amount of $1,876.65 drafted against the account of Acadian Carpet Center. The bank employee identified the check as counterfeit and called police. Police arrived, arrested CS-3, and transported CS-3 to the Jefferson Parish Investigations Bureau where CS-3 gave a voluntary statement. CS-3 positively identified **ARMSTEAD** as the individual who recruited him/her to cash the counterfeit check. CS-3 identified **ARMSTEAD** from a media clip containing his photograph and distinctly recalled the tattoo along Juan Armstead's jawline. CS-3 stated that **ARMSTEAD** was in a black Jeep SUV. CS-3 said that **ARMSTEAD** provided CS-3 with a counterfeit check and advised that CS-3 would receive 10% of the check funds after cashing it.

On or about December 4, 2018, a St. Tammany Parish Sheriff's Office Detective conducted an interview of yet another confidential source (CS-4), who had been arrested by the Slidell Police Department for attempting to cash a fraudulent check. CS-4 stated he/she was recruited to cash checks on several different occasions. CS-4 stated a black male subject pulled up in a black Jeep Cherokee and asked him if he wanted a job. The black male told CS-4 he needed to cash some checks so he could pay his Hispanic workers cash. In exchange, CS-4 received $250.00 per transaction. CS-4 recalled cashing checks on at least three days. Each time, the same black male picked him/her up in the same black Jeep Cherokee. CS-4 did not know the name of

the black male but positively identified him as **ARMSTEAD** from a photo line-up. CS-4 described the black male as having tattoos on his face. CS-4 said **ARMSTEAD** was from the Atlanta area and had Georgia tags on the black Jeep Cherokee.

On or about December 26, 2018, another confidential source (CS-5) was arrested at Iberia Bank, 5120 Citrus Blvd, Elmwood, LA. CS-5 attempted to cash a counterfeit check purportedly from Deloach Marine Services LLC in the amount of $1,669.12. Upon being shown a photographic line-up, CS-5 picked out **ARMSTEAD** as one of three individuals involved in the check cashing scheme. CS-5 stated that two other suspects were involved with **ARMSTEAD** and it appeared **ARMSTEAD** was directing them what to do over a cell phone. According to CS-5 **ARMSTEAD** was driving a black Jeep.

On January 31, 2019, federal law enforcement officers arrested **ARMSTEAD** pursuant to a federal arrest warrant issued in the Eastern District of Louisiana. Among other things, a search of **ARMSTEAD**'s car and residence pursuant to a federal search warrant recovered counterfeit checks, stolen checks, a typewriter, five mobile telephones, and a rifle. The rifle was a Palmetto State Armory rifle, Model PA-15, Serial Number LW 149881.

**ARMSTEAD** is a convicted felon and is prohibited from possessing a firearm. Prior to his possession of the firearm, the federal Government convicted **ARMSTEAD** of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about April 10, 2015, in the United States District Court for the Western District of Pennsylvania, Criminal Docket Number 12-238-01, for conspiracy to utter counterfeit checks and bank fraud in violation of Title 18, United States Code, Section 371, for which he was sentenced to 37 months in prison. **ARMSTEAD** knew that he was convicted of a crime punishable by imprisonment for a term exceeding one year prior to and at the time he possessed the rifle involved in this case.

AUSA
Defendant
Defense Counsel

The firearm was not manufactured in the State of Louisiana. In order for the firearm to have been recovered in the State of Louisiana, it necessarily traveled in and affected interstate commerce. The firearm manufacturer designed the firearm to expel a projectile by action of an explosive. Finally, the term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

**Limited Nature of Factual Basis**

This proffer of evidence is not intended to constitute a complete statement of all facts relevant to this matter, but rather is a minimum statement of facts intended to prove the necessary factual predicates for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged offenses.

**READ AND APPROVED:**

_____     11/19/19
DUANE A. EVANS                       DATE
Assistant United States Attorney

_____     11/19/19
JERROD THOMPSON-HICKS                DATE
Counsel for Juan Armstead

_____     11/19/19
JUAN ARMSTEAD                        DATE
Defendant

AUSA
Defendant
Defense Counsel